## PEOPLE *v.* BETSINGER.

*(Supreme Court, General Term, Fourth Department.* November, 1890.)

RAPE—EVIDENCE.

At the trial for rape, a physician testified that, nearly three months after the time when the offense was alleged to have been committed, he made an examination of the prosecutrix, and found the hymen absent; that there were traces of it, but it was not intact, and not in a normal condition for a virgin. *Held,* that evidence was competent on behalf of defendant that prosecutrix had had intercourse with others; and that she might be asked, on cross-examination, whether she had acknowledged to a person named that she wrote to a certain man, "and asked him how he would like to do it to her."

Appeal from court of sessions, Onondaga county.

Indictment charging Nicholas N. Betsinger with rape on one Frieda Goessley, in the town of Marcellus, on the 10th day of February, 1890. It appeared in the evidence that she was born October 20, 1875, in Germany; that near the last of January, 1890, she went to live with the defendant's family; and that before that time she had lived in an orphan asylum at Auburn. Defendant, as a witness, denied absolutely the accusation, and called witnesses to testify that his general character was good. The jury found a verdict of guilty, and defendant was sentenced thereon to imprisonment in the state prison for a term of 14 years and 10 months. From the judgment, and from three orders, severally denying a motion made in arrest of judgment, a motion for a new trial, and a motion to set aside the verdict, defendant appeals.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*Lawrence T. Jones,* for appellant.    *P. J. Shove,* for the People.

HARDIN, P. J. Apparently for the purpose of corroborating the complainant, the prosecution called Dr. Head, a physician and surgeon of 25 years' practice, who testified that about the 5th of May he made a manual examination of the complainant. In the course of his testimony, he said, viz.: "I found the hymen absent. There were traces of a hymen there, but it was not intact. I could hardly swear that it had been broken or ruptured. I found traces of a hymen there, but it was not intact. It was not in a normal condition for a virgin. * * * She was well developed. I am not able to state whether she had reached womanhood or not." This testimony was received under objection and exception by the defendant, and after it had been given the defendant moved to strike the evidence out, "upon the ground that the examination was made too long after the alleged rape, and upon the ground that it is generally immaterial and incompetent evidence." The court refused to strike it out, observing, viz.: "I think it goes to the value of the testimony rather than its competency." The motion to strike out was denied, and the defendant took an exception. When the complainant was upon the stand, she was asked several questions as to her previous habits and practices, and to one of the questions she replied, viz.: "I did not tell Edwards North, when I was sliding down hill with him, that a man did it to me once, nor anything to that effect." Thereafter the defendant called as a witness, Edwards North, who testified that he was acquainted with the complainant, and had been in the habit of playing with her; and he was asked if he remembered having had a talk with the complainant, one day when they were sliding down hill together, "about something that some man had done to her once before." This question was objected to by the people, and the objection was sustained. Apparently the evidence was avowed to be offered for two purposes,—*first,* as bearing upon the credibility of the complainant; and, *second,* as tending to overcome the testimony of Dr. Head, and the inferences to be drawn therefrom. The evidence was excluded by the court, and the defendant took an exception. Then the question was put to him by the defendant, viz.: "Did she say that this man was a drunken man?" And the witness answered, "Yes,

sir." It was then objected to, and the court struck out the answer, and to that ruling the defendant's counsel took an exception, and thereupon the court made this remark: "I deem it non-essential, entirely, whether this child has been raped or otherwise ill treated a dozen times prior to this." Some further colloquy took place between the court and the counsel for the defendant, and, at the close thereof, the court having failed to either strike out the testimony of Dr. Head, or to allow the evidence which was proposed, an exception was taken by the defendant's counsel. We think the trial court fell into an error in the rulings and statements which we have quoted. After the testimony of Dr. Head had been given, it was entirely competent for the defendant to show, if he could, by evidence, that the complainant had been having intercourse with other parties, which would account for the condition in which the doctor stated he found her sexual organ. Surely, if she had "been raped or otherwise ill treated a dozen times prior to this," the time when Dr. Head made the personal examination of her, the force of the facts stated by him in his narration of the condition in which he found her at the time he made the examination would have been broken, and it would have been for the jury to say whether or no the condition in which he found her was by reason of any act of the defendant, or by reason of her practices with other parties. *People* v. *Crapo*, 76 N. Y. 288; affirming 15 Hun, 269.

2. When the complainant was upon her cross-examination, she was asked whether she acknowledged to Mrs. Walford that she "wrote to Stacy Amidon, and asked him how he would like to do it to her." The witness seems to have answered in the first instance, "Not that I remember of;" and, when asked if she would swear that she did not do it, an objection was taken, and the objection was sustained, and the defendant took an exception. It appears by the case that the question was repeated, and, although objected to, that the witness said, "No, sir;" and thereafter the question was repeated, viz.: "But you do not remember whether you acknowledged to Mrs. Walford that you wrote them?" And the court, upon an objection, observed: "That has been excluded once." The defendant took an exception. Thereupon the defendant was about to make an offer, and the court observed: "I do not think it is proper examination. My judgment is about as I have ruled." To that the defendant took an exception. We think the court might very well have properly allowed greater latitude in the cross-examination of the complainant. *People* v. *Hulse*, 3 Hill, 316.

3. Several very close questions arose in the case, in respect to the rulings made when jurors were under examination. We do not deem it needful to examine all the rulings made in respect to the jurors, inasmuch as we are of the opinion that the views already expressed must lead to a new trial. Conviction, orders, and judgment reversed, and a new trial ordered in the court of sessions of Onondaga county, to which court proceedings are remitted.

MARTIN, J., concurs. MERWIN, J., concurs in result.